
**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **ELIZABETH BRIDGES, 1300565,** § | |
| Petitioner, § | |
| § | |
| V. § | NO. 3:07-CV-1203-K |
| § | |
| **RICK THALER, Director** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Division,** § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

On April 21, 2005, Petitioner was convicted of serious bodily injury to a child and was sentenced to twenty-five years confinement. *State v. Bridges*, No. F-0150928 (195th Jud. Dist. Ct., Dallas County, Tex., April 21, 2005). On March 8, 2006, the Fifth District Court of Appeals affirmed the conviction. *Bridges v. State*, No. 05-05-0067-CR (Tex. App. – Dallas, March 8, 2006, no pet.). Petitioner did not file a petition for discretionary review.

On July 11, 2006, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Bridges*, Application No. 66,299-01. On December 6, 2006, the Court of Appeals denied the

petition without written order on the findings of the trial court. *Id.* at cover.

On May 29, 2007, Petitioner filed this federal petition. Petitioner argues:

(1)   She is actually innocent;

(2)   The indictment was defective;

(3)   The evidence was legally and factually insufficient;

(4)   The prosecutor committed misconduct by:

    (a)   violating *Brady*;

    (b)   using perjured testimony; and

    (c)   making improper closing arguments;

(5)   The police committed misconduct;

(6)   The trial court erred when it:

    (a)   provided incorrect jury instructions;

    (b)   failed to *sua sponte* instruct the jury on negligence;

    (c)   admitted a photo of the victim on life-support;

    (d)   entered an affirmative finding of a deadly weapon;

(7)   The jury was biased;

(8)   She received ineffective assistance of trial counsel because counsel

    (a)   failed to investigate, failed to interview witnesses and failed to hire an expert;

    (b)   failed to move to suppress Petitioner's statement as involuntary;

    (c)   failed to object to the indictment;

    (d)   failed to move for a directed verdict;

        (e)        failed to object to Detective Lesher's testimony as hearsay or perjury;

        (f)        failed to present evidence that Petitioner acted negligently rather than intentionally;

        (g)        failed to object to the photograph of the baby on life support;

        (h)        failed use Dr. Persaud's testimony to bolster Petitioner's defense;

        (I)        failed to properly advise Petitioner regarding the range of punishment;

(9)        She received ineffective assistance of appellate counsel when counsel:

        (a)        put the incorrect appeal number on the cover page of the brief;

        (b)        failed to object that the state's brief stated she was convicted of aggravated assault;

        (c)        inadequately researched and prepared the case; and

        (d)        failed to raise several claims.

On September 17, 2007, Respondent filed his answer. On October 5, 2007, Petitioner filed her reply. On July 29, 2009, the Court held an evidentiary hearing. On August 25, 2009, Petitioner filed supplemental briefing. On November 16, 2009, Respondent filed supplemental briefing. The Court now recommends that the petition should be granted.

## II.  Factual Background

Petitioner lived in an apartment with her sister, Shewanna, and Shewanna's two children Latrice, then age three, and Benny, then age fifteen months.

On the day of the incident, Lakeita Parker, a friend of Petitioner's and Shewanna's, left her five month old son, Devine, with Petitioner around 9:30 p.m. and then left to pick up Shewanna from work. (Trial Tr. Vol. 3 at 27-33.) While Parker was gone, her son Devine

suffered a serious head injury. He was taken to the hospital by ambulance and was placed on life support. (*Id.* at 36-39.) He survived the injury, but he cannot walk on his own and will need eye surgery in the future. (*Id.* at 41.)

The facts are in dispute as to how the child was injured. When Lakeita Parker left the apartment to pick up Shewanna, the people present in the apartment were Petitioner, Petitioner's eleven-year-old cousin Mattie, Shewanna's children Latrice and Benny, Devine and two downstairs neighbors. (*Id.* at 31.) There is no dispute that the neighbors left before Devine was injured.

Detective Lesher testified that he interviewed Petitioner and Mattie the day after the incident. (*Id*. at 85.) He also took a written statement from Petitioner. (*Id*.) In the statement, Petitioner stated she left the apartment to go downstairs to use the telephone because there was no telephone in the apartment. (*Id*. at 86-90; State's Ex. 7.) As she returned through the front door of the apartment, she saw Benny, the fifteen-month-old, and Devine in his car seat in the living room. (*Id*.) She saw Benny flip Devine's car seat into the coffee table. (*Id*. at 97.) She also demonstrated what she saw, and Lesher took photos of the demonstration. (*Id*.) She stated Devine had a large knot on his head and that she called 911. (*Id*.)

Petitioner's written statement, however, also included a different version of the events. Petitioner stated she left the apartment to make a phone call and when she returned, Mattie told her that she took Devine into the kitchen and Benny flipped the car seat over, resulting in Devine's injuries. (State's Ex. 7.)

Lesher also testified that he interviewed Mattie the day after the incident. He stated Mattie told him that Devine was in his car seat and was crying. (*Id*. at 211.) Mattie took him to

the living room and put him on the floor so she could look for a bottle for him. (*Id.*) She heard Benny in a back bedroom closet, so went there to look for him. (*Id.*) While in the bedroom, she heard Devine cry out. (*Id.* at 212.) When she left the bedroom, she saw Devine lying on the living room floor with Petitioner standing over him. (*Id.*) Lesher did not get a written statement from Mattie. He stated he went to Mattie's home the next day to get a written statement, but Mattie's mother would not allow her to write a statement. (*Id.* at 213-14.)

Mattie testified that Lesher's version of the events was untrue. (*Id.* at 169.) She stated that Petitioner sent her into the kitchen to get a bottle for Devine and then left the apartment to make a phone call and to walk Petitioner's two young nieces to her sister's apartment in the complex. (*Id.* at 162.) Mattie took Devine, in his car seat, into the kitchen and set him on the kitchen table. (*Id.* at 163.) Devine was not strapped into his car seat. (*Id.* at 173.) She went into a back room to get a bottle. Benny was also in the back room playing in a closet. (*Id.* at 164, 168.) While Mattie was in the back room, Benny ran out of the room. (*Id.*) Mattie then heard something fall, and she heard Devine cry. (*Id.*) She ran back to the kitchen and saw Benny in the kitchen and saw Devine on the kitchen floor. (*Id.* at 164, 174.) Devine had a large lump on his head. (*Id* at 165.) Petitioner then arrived back at the apartment with her boyfriend. (*Id.* at 165.)

Mattie stated that Lesher came to her house to interview her. She testified that Lesher became angry and left without taking a written statement from her. (*Id.* at 169.)

Mattie's mother, Ella Washington, also testified that Lesher came to her house to interview Mattie. (*Id.* at 149.) She stated that Lesher became angry at Mattie because Mattie would not agree to his version of the events. (*Id.* at 150.) Washington testified that Lesher left

the apartment angry and did not obtain a statement. (*Id*. at 152.)

Petitioner's sister, LaTonya Alexander, testified that on the date of the incident, Petitioner walked her child (Petitioner's niece) back to her apartment around 9:30 to 10:00 p.m. (*Id*. at 179.)

Petitioner testified that she left the apartment to walk two of her nieces to their apartment in the complex and to call her boyfriend from the downstairs neighbor's telephone. (*Id*. at 194-195.) While she was calling her boyfriend, she saw him pull into the apartment complex. (*Id*. at 196). She and her boyfriend then walked up to her apartment. (*Id*. at 196). When she walked into the apartment, she saw Devine in the car seat on the couch, and he was crying. (*Id*.) She saw that he had a large knot on his head. (*Id*.) She ran downstairs to use the phone to call 911 and also ran to her aunt's apartment in the complex to get help. (*Id*.)

Petitioner stated that she originally told Lesher, Devine's mother, and the 911 operator that she saw Benny flip Devine's car seat into the coffee table because she was afraid to admit that she left the children alone. (*Id*. at 197-98.)

Dwayne Greene, Petitioner's boyfriend at the time of the incident, testified that Petitioner called him between 9:40 p.m. and 10:00 p.m. on the day of the incident. (*Id*. at 184.) He stated Petitioner was downstairs calling him when he arrived at the apartment complex. (*Id*.) He stated that he and Petitioner then went upstairs and saw Devine in his car seat on the couch crying, and that Mattie was in the apartment with him. (*Id*. at 185.) He said Petitioner went downstairs to the neighbor's phone to call the ambulance. (*Id*. at 183.)

The state called Dr. Donna Persaud as an expert witness. Dr. Persaud worked at Children's Medical Center of Dallas and examined Devine the day after the incident. (*Id*. at

106). Dr. Persaud testified that if Benny flipped Devine's car seat into the coffee table, it could not have caused Devine's serious injuries. (*Id*. at 115.)

Neither the prosecution nor the defense asked Dr. Persaud whether a fall from a kitchen table could have caused Devine's injuries.

The jury found Petitioner guilty of serious bodily injury to a child and sentenced her to twenty-five years imprisonment.

### III. Discussion

**1.     Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)     An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.

**2**.     **Ineffective Assistance of Counsel**

The Court first examines whether Petitioner received ineffective assistance of counsel because her counsel failed to object to Detective Lesher's rebuttal testimony.  As that issue entitles Petitioner to relief, the Court will not reach Petitioner's remaining claims.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong."  *Id*.  "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"  *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**          Page -8-

### 3. Ineffective Assistance of Counsel for failure to object to Detective Lesher's Testimony

Petitioner argues her counsel was ineffective for failing to raise a hearsay objection to Detective Lesher's testimony that Mattie told him Petitioner was in the apartment when Devine was injured, and that Mattie saw Petitioner standing over Devine at the time of injury.[1]

In the prosecutor's case-in-chief, Detective Lesher testified that he interviewed Mattie on March 28, 2001, the day after the incident. He stated that he also went to her house the next day, March 29, 2001, to get a written statement, but that Mattie had changed her story. During the prosecutor's case-in-chief, Lesher did not testify as to what Mattie said on either date.

Mattie then testified that Petitioner was not in the apartment when Devine was injured. She stated that she placed Devine on the kitchen table in his car seat and that he fell off the table and hit his head on the floor. (Trial Tr. at 163-65.)

On cross-examination, Mattie denied that she ever told Lesher that Petitioner was in the apartment at the time Devine was injured, and she denied saying that she saw Petitioner standing over Devine at the time he was injured. (*Id*. at 169, 174.)

The state re-called Lesher as a rebuttal witness. At that time, Lesher testified:

> [Mattie] told me that she was caring for Benny, the one-year-old, and that [Devine] then was crying. That she – [Devine] was in a car seat carrier. She had gone back to a rear bedroom. [Devine] was still crying. So she took [Devine] back out to the living room, put [Devine] on the floor, you know, in the carrier, went back to the back bedroom, said that Benny had gotten into a closet.
>
> She was looking for a bottle to feed [Devine] with. That Benny had gotten into a

---

[1] The Court liberally construes Petitioner's *pro se* pleadings. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). The Court finds Petitioner's claim that defense counsel failed to object to Lesher's rebuttal testimony encompasses a failure to request a limiting instruction if the rebuttal testimony was admitted over a hearsay objection.

>    closet and was messing around in the closet. And it was at that time she heard what she described as [Devine] cry out.
>
>    I asked her, "Was it crying like [Devine] was hungry?" And she said, "No, it was a louder cry than that."
>
>    And at that point she exited the back room and came out, saw [Devine] on the floor and the [Petitioner] standing above [Devine].

(*Id.* at 211-212.)

Defense counsel made no objection to Lesher's rebuttal testimony. Petitioner argues defense counsel should have objected that Lesher's rebuttal testimony regarding what Mattie said was hearsay.

Petitioner raised this claim in her state habeas petition. On state habeas review, defense counsel filed an affidavit stating that Lesher's rebuttal testimony was hearsay, but was admissible as a prior inconsistent statement by Mattie. (*Ex parte Bridges* at 112.) Under Texas Rule of Evidence 613(a) a witness may be impeached by a prior inconsistent statement.

If defense counsel had objected that Lesher's testimony was hearsay, however, the testimony would have been properly excluded unless the prosecution cited either an exception to the hearsay rule, or showed the testimony was non-hearsay. The Court knows of no hearsay exception applicable to this testimony. If the prosecution responded to a hearsay objection by stating the testimony was non-hearsay and was admissible as a prior inconsistent statement under Rule 613(a), Petitioner would have been entitled to a limiting instruction regarding Lesher's testimony. *Ex parte Munsch, II*, No. AP-76094, 2009 WL 256505 at *1 (Tex. Crim. App. 2009) (citing *Routier v. State*, 112 S.W.3d 554, 591 (Tex. Crim. App. 2003); TEX. R. EVID. 105. Under a limiting instruction, the jury would have been told to consider Lesher's rebuttal testimony as *impeachment evidence only*. *Id*. The evidence of what Mattie may have said to Lesher could not

be considered for its truth and could not be considered as substantive evidence.  *Ex parte Munsch, II*, 2009 WL 256505 at *1 (unpublished) (per curiam) (citing *Routier v. State*, 112 S.W.3d 554, 591 (Tex. Crim. App. 2003)).

The Texas Court of Criminal Appeals has found that failure to request a limiting instruction can constitute ineffective assistance of counsel.  In *Ex parte Munsch, II*, No. AP-76094, 2009 WL 256505 at *1 (Tex. Crim. App. 2009), the petitioner was convicted of aggravated sexual assault of a child.  Petitioner argued his counsel was ineffective for failing to request a limiting instruction on testimony offered as a prior inconsistent statement under Tex. R. Evid. 613(a).  The Court determined that the only evidence of penetration admitted at trial was the testimony offered under Rule 613(a).  The Court also found that this impeachment testimony was considered for the truth of the matter asserted.  The Court stated that a limiting instruction is "essential () to ensure that the jury [does] not misuse impeachment evidence as substantive evidence of guilt."  *Id*.; *see also Routier v. State*, 112 S.W.3d 554, 591 (Tex. Crim. App. 2003) (stating impeachment evidence is not used as substantive evidence).  The Court found that failure to request a limiting instruction on this testimony amounted to ineffective assistance of counsel.

Likewise, in this case, the only evidence admitted at trial that Petitioner was in the apartment and standing close enough to Devine to injure him was Detective Lesher's rebuttal testimony.  Mattie and Petitioner both testified at trial that Petitioner was not in the apartment when Devine was injured.  Petitioner disavowed her pre-trial statement that when she entered the apartment she saw Bennie flip Devine's car seat into a coffee table.  The state did not challenge Petitioner's trial testimony that this pre-trial statement was untrue.  In fact, the state also argued

that this pre-trial statement was false. (Trial Tr. Vol. 4 at 202.) Therefore, without Lesher's rebuttal testimony, there was insufficient evidence that Petitioner was in the apartment, and close enough to cause Devine injuries, at the time Devine sustained his injuries.[2]

Defense counsel, however, made no objection to Lesher's testimony. Lesher's rebuttal testimony was therefore admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2003). The prosecutor used Lesher's rebuttal testimony to support a finding a guilt. In his closing, the prosecutor stated:

> Even on that day, [the day after the incident] Mattie had [Petitioner] standing over this child when these injuries happened.
>
> As of the 28th, [the day after the incident] [Petitioner] is there when it happens, even by Mattie telling the detective that when she runs back there – [Mattie's] in the back room.
>
> [Mattie's] back there with Benny, the 15-month-old. She hears the cry, she comes out, and there's the baby on the floor, and there's [Petitioner] over the baby.
>
> * * * *
>
> As of the 28th, Mattie put [Petitioner] right there when it happened.

(Trial Tr. Vol. 4 at 26, 30.)

Defense counsel recognized the importance of Lesher's rebuttal testimony. Defense counsel stated in his affidavit on state habeas review: "[M]ost damaging was the fact that the only other witness, Mattie Moore, whom the defense could not explain a motive for lying told the police, according to the testimony of Detective Lesher that [Petitioner] was the only person present when the baby was injured." (*Ex parte Bridges*, at 111.)

---

[2]There was also no expert testimony or evidence stating that a fall from the kitchen table could not have caused Devine's injuries. Dr. Persaud was not questioned regarding this fact scenario.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**         Page -12-

The Court finds defense counsel's failure to object to Lesher's rebuttal testimony and, if the evidence was admitted, to request a limiting instruction, constituted deficient performance that prejudiced Petitioner. Petitioner need not prove conclusively that the result of her trial would have been different. *United States v. Castro*, 26 F.3d 557, 563 (5th Cir. 1994). She has established that but for her counsel's deficient performance, there is a reasonable probability that the result of her trial would have been different.

Although the state court correctly identified *Strickland* as the controlling precedent, the state court's decision to deny relief was an unreasonable application of clearly established federal law, and was an unreasonable determination of the facts in light of the evidence presented in state court.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned Magistrate Judge recommends that the District Court grant the petition for habeas corpus relief brought pursuant to 28 U.S.C. § 2254. The Court should issue a writ of habeas corpus and direct Rick Thaler, Director of TDCJ-CID, to release Petitioner from custody imposed in trial court Cause No. F-0150928, in the 195th Judicial District Court of Dallas County, Texas, unless, within sixty days of the date these findings, conclusions and recommendation are adopted by the District Judge, the State of Texas affords Petitioner a new trial.

Signed this 25th day of January 2010.

*[signature]*

**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

**INSTRUCTIONS FOR SERVICE AND**
**<u>NOTICE OF RIGHT TO OBJECT</u>**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).